

**FILED**
APR 1 7 2006

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 06-40003-02 |
| Plaintiff, | |
| vs. | REPORT and RECOMMENDATION |
| MARIA NUNEZ, a/k/a Maria Pino, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Defendant Nunez's Motion to Dismiss, or in the Alternative, Motion to Transfer (Doc. 42). A hearing was held on Monday, April 3, 2006. Defendant was personally present and represented by her counsel of record, Assistant Federal Public Defender Tim Langley. The Government was represented by Assistant United States Attorney Kathryn Ford. FBI Agent Matthew Miller testified at the hearing. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Dismiss, or in the Alternative to Transfer, be **DENIED**.

## JURISDICTION

Defendant is charged in an Indictment with Bank Fraud in violation of 18 U.S.C. § 1344. The pending Motion to Dismiss/Transfer was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated February 1, 2002.

## FACTUAL BACKGROUND

FBI Special Agent Matthew Miller became involved in the investigation of the defendants when he was contacted by BankFirst in Sioux Falls, South Dakota regarding BankFirst's Freedom Debit cards.[1] BankFirst was the issuing bank for the cards, and it believed there were three people who had taken advantage of a malfunction in the system to obtain money which did not belong to them.

Platinum Financial Group marketed the Freedom Debit cards and sold them to retailers. Lynk (headquartered in Atlanta, Georgia) was a processing agent between the retailers and BankFirst. Consumers bought the Freedom Debit Card at retail locations. The retailers had machines to "load" customers' cards with cash, provided by the customers. The customers could then use the cards as credit/debit cards. When money was added to the cards, it was processed through Lynk's system in Rhode Island.

BankFirst was responsible for paying MasterCard when the customers used funds from their Freedom Debit cards. As soon as the customers added funds to their cards, BankFirst received an immediate credit from Lynk. If for whatever reason a customer "overspent" Lynk was supposed to send a debit into BankFirst's account. BankFirst then shut the card down. The system malfunctioned, however, and the cards issued to the defendants in this case were allegedly allowed to "overspend" by significant amounts. As a result, BankFirst continued to pay MasterCard as the charges came in, but there was no money in the accounts to cover the charges. Lynk was aware of the problem, but because of the malfunction did not notify Bankfirst, who continued to pay the

---

[1] Agent Miller was unsure whether BankFirst is a South Dakota Corporation, but he testified that BankFirst's principal place of business is in Sioux Falls.

charges to MasterCard. BankFirst and Lynk both suffered losses as a result.

BankFirst absorbed approximately $5,000.00 of the loss, and Lynk absorbed approximately $95,000.00 of the loss incurred because of the lack of funds to cover the withdrawals/purchases allegedly made with the defendants' Freedom Debit cards. The purchases/withdrawals allegedly made with the defendants' Freedom Debit cards were made almost exclusively in the Hialeah, Florida area. None of the transactions occurred in South Dakota. In Agent Miller's experience, the loss threshold for investigation and prosecution of cases in Florida is very high because of the heavy case load there. The Florida office of the FBI would be able to rely on the investigative work Agent Miller has already done, however, should the case be transferred to Florida. Agent Miller does not have any specific knowledge of whether this case would be prosecuted should it be transferred to Florida.

BankFirst, as the issuing bank of the Freedom Debit Cards, was ultimately responsible for submitting suspicious activity reports and for paying the charges to MasterCard. Agent Miller was the responsible case agent, and the majority of the investigation was conducted with BankFirst personnel in South Dakota. The majority of the investigation was conducted in South Dakota, although interviews of the suspects were conducted in Florida. The documentation to support the charges made on the accounts was provided by BankFirst personnel, also located in South Dakota. The BankFirst personnel analyzed the problems which resulted from the malfunction in Lynk's system, but could not explain the reason for the malfunction. Agent Miller admitted that if any witnesses have specific knowledge (eyewitness accounts or specific recollections, for example) regarding the individual transactions (ATM withdrawals and retail purchases made with the Freedom Debit Cards) which form the basis of the pending charges, that evidence would be found in Florida,

not South Dakota.[2]

Defendant Nunez asserts venue is improper in South Dakota. Alternatively, she asserts venue should be transferred to Florida pursuant to Fed. R. Civ. P. 21(b) for the convenience of the parties and witnesses and in the interests of justice.

## DISCUSSION

### Burden of Proof

The government bears the burden of proving correctness of venue by a preponderance of the evidence. United States v. Chandler, 66 F.3d 1460, 1470 (8th Cir. 1995). "The burden of proof on venue always remains with the government." United States v. Miller, 111 F.3d 747, 751 (10th Cir. 1997). The burden to show a *transfer* is justified for the convenience of the parties or some other reason pursuant to Rule 21, however, is upon the moving party. In Re: United States, 273 F.3d 380, 389 (3rd Cir. 2001). United States v. Long, 697 F. Supp.651, 656 (S.D.N.Y. 1988); United States v. Aronoff, 463 F. Supp. 454, 461 (S.D.N.Y. 1978). See also 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE:CRIMINAL § 344 (3rd Ed. 2000) ("it is proper to require the defendant, as the moving party, to carry the burden of showing why transfer would serve the purposes specified in the rule.").

### Motion to Dismiss for Lack of Venue

Fed. R. Crim. P. 18 requires the government to "prosecute an offense in a district where the offense was committed . . ." Defendant Nunez first asserts venue is improper in South Dakota. In a criminal case, the question of venue is "not merely a legal technicality, but a significant matter of public policy." United States v. Netz, 758 F.2d 1308, 1312 (8th Cir. 1985). The right to be tried in

---

[2]In the Nunez/Pino case, there were approximately 120 transactions between November, 2004 and January, 2005. In the Beltran case, there were approximately 90 transactions.

the appropriate venue is one of the constitutional protections provided to defendants by the Sixth Amendment. United States v. Scott, 270 F.3d 30, 34 (1st Cir. 2001).

Venue must be determined from the nature of the crime alleged and the location of the act or acts constituting it. United States v. Washington, 109 F.3d 459, 466 (8th Cir. 1997). See also United States v. Korolkov, 870 F. Supp. 60, 62 (S.D.N.Y. 1994) ("Congress has enacted no specific venue provisions applicable to wire and bank fraud provisions. The Supreme Court has held that where Congress has not explicitly specified the proper venue for a particular offense, courts should look to the 'nature of the crime alleged and the location of the act or acts constituting it.'"). The constitutional standards for venue, however, concern the locality of the substantive offense rather than the location of the offender at the time of the offense. United States v. Chestnut, 533 F.2d 40, 47 (2nd Cir. 1976).

An offense which is begun in one district and completed in another, or committed in more than one district may be prosecuted any district in which it was begun, continued or completed. 18 U.S.C. § 3237(a); United States v. Washington, 109 F.3d 459, 466 (8th Cir. 1997). Bank fraud is a continuing offense under 18 U.S.C. § 3237(a), so venue is proper wherever the offense was "begun, continued or completed." United States v. Scott, 270 F.3d 30, 36 (1st Cir. 2001); United States v. Washington, 109 F.3d 459, 466 (8th Cir. 1997).

Bank Fraud is defined by 18 U.S.C. § 1344:

Whoever knowingly executes, or attempts to execute, a scheme or artifice--
    (1) to defraud a financial institution; or
    (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Defendant cites US v. Reed, 773 F.2d 477 (2nd Cir. 1985) for the proposition that venue is improper in South Dakota. The Reed Court used a four-part test to determine whether venue was proper in a prosecution for perjury/obstruction of justice, where the false statements were made in California, but the case was prosecuted New York.[3] The Court applied a four-part test to determine whether the case should be prosecuted in California (where Reed gave the false statements) or New York (where the harm caused by the false statements was done): (1) The site of the defendant's acts; (2) the elements and nature of the crime; (3) the locus of the effect of the criminal conduct; and (4) the suitability of each district for accurate fact-finding. The Reed Court held that, although the defendant's act (giving false testimony) occurred in California, the case was properly venued in New York. Reed, 773 F.2d at 483. "The criminal acts alleged here were committed in California. The other factors clearly indicate, however, that venue was proper [in New York] as well." Id. The Reed case has been cited by the Fourth Circuit in a bank fraud case to support laying venue where the defrauded bank was located, rather than where the defendant wrote and deposited the worthless check. See United States v. Bankole, 39 Fed. Appx. 839 (4th Cir. 2002) (copy attached)[4] The court noted, "of course, there may be more than one appropriate venue for such a federal criminal charge, and a particular venue is not improper simply because the defendant was never physically present there." Id. at 842. Thus, while the defendant's conduct occurred in Maryland, venue was proper in Virginia because the bank from which the vendor obtained the nonexistent funds completed the

---

[3]In Reed the defendant made false statements during a deposition taken in San Francisco. The deposition related to a civil case which was then pending in New York. Reed was prosecuted for perjury and obstruction of justice in New York.

[4]Pursuant to Fourth Circuit Rule 36(c), unpublished opinions are generally not cited. The Bankole case is cited here because of its persuasiveness and factual similarity to this case.

-6-

debit transaction in that district. "And the uncontradicted evidence is that [the bank] operates its accounting processing in Alexandria, Virginia, and that the debit transaction was completed there . . . the offense was *begun* in Maryland . . . and was *completed* in Virginia." Id. at 843.

Because bank fraud is a continuing offense, more than one venue may be appropriate. 18 U.S.C. § 3237(a). The Indictment alleges a scheme to defraud BankFirst, which is in South Dakota. Agent Miller testified that BankFirst –in South Dakota--absorbed at least some of the financial loss caused by the alleged scheme, because it paid the charges incurred on the Freedom Debit Cards which had no funds in their accounts. The offense, therefore, was completed in South Dakota. Venue is appropriate pursuant to 18 U.S.C. § 3237(a).

Application of the Reed factors also indicates South Dakota is an appropriate venue. While the defendant's alleged acts occurred in Florida, the elements and nature of the crime are by their nature not localized. A scheme to defraud a financial institution, or to obtain its funds by false pretenses, is likely to be started in one jurisdiction and completed in another. The locus of the effect of the criminal conduct weighs in favor of prosecuting the case in South Dakota. And while Defendant Nunez speculated there *might* be two witnesses from Florida who could provide relevant testimony or evidence, Agent Miller testified there *are* witnesses who *will* provide relevant evidence and documentation in South Dakota. See also United States v. Korolkov, 870 F. Supp. 60, 62-63 (S.D.N.Y. 1994) (applying Reed factors to find venue appropriate in district where bank was located instead of where defendant committed allegedly fraudulent acts). For all these reasons, it is respectfully recommended to the District Court that Defendant's Motion to Dismiss for Lack of Venue (Doc. 42) be DENIED.

## Motion to Transfer Pursuant to Fed. R. Crim. P. 21(b)

Alternatively, Defendant Nunez moves to transfer venue to the Southern District of Florida pursuant to Fed. R. Crim. P. 21(b) "for the convenience of the parties and witnesses and in the interests of justice." The decision whether the convenience of the parties and witnesses and the interest of justice requires the transfer of a criminal case is within the sound discretion of the trial court. United States v. Green, 983 F.2d 100, 103 (8th Cir. 1992). The United States Supreme Court has identified several factors to determine when considering a motion to transfer: (1) the location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessability of the place of trial; (9) docket condition of each district or division involved; and (10 any other special elements which might affect the transfer. Platt v. Minnesota Mining & Manufacturing, 376 U.S. 240, 84 S.Ct. 769, 11 L. Ed.2d 674 (1964).

Both defendants in this case reside in Florida. The Eighth Circuit has noted a defendant's residence is one factor that weighs in favor of transferring the case, but does not in itself entitle the defendant to a transfer. United States v. Bittner, 728 F.2d 1038, 1041 (8th Cir. 1984). The Government has indicated the BankFirst witnesses and documentation are located in South Dakota. Defendant Nunez indicated there might be witnesses in Florida who could provide information relevant to possible defenses. Defendant Nunez is in custody in South Dakota; Defendant Beltran has been released pending trial and is in Florida. The expense of investigation is a matter which has been considered. While investigation of the events which occurred in Florida by court appointed counsel in South Dakota does present a logistical difficulty, the same problem would present itself

in reverse should the case be transferred to Florida. Also, indigent defendants may make ex parte application for investigative, expert or other services necessary at the Government's expense pursuant to 18 U.S.C. §3006A(e). The Government asserts the dockets are crowded in Florida and the loss amount presented by this case is not likely to be prosecuted. No evidence was presented, however, regarding the current caseload in Florida or whether this case could or would be prosecuted there in a timely manner.

The Court has carefully considered all Platt factors and respectfully recommends to the District Court that Defendant's Motion to transfer venue pursuant to Fed. R. Crim. P. 21(b) be DENIED. See also United States v. McGregor, 503 F.2d 1167, 1170 (8th Cir. 1974) (Mail fraud case in which defendant's motion to transfer venue denied because defrauded company was located in Minnesota, where case was prosecuted. The court reasoned that the chief government witness and most of the documents entered into evidence were located in Minnesota, and "these factors buttress the trial court's denial of the motion for transfer.").

## CONCLUSION

Bank fraud is a continuing offense, and may be prosecuted where it was begun, continued or completed. The Government has sufficiently alleged the offense was "completed" in South Dakota when funds were paid by BankFirst to MasterCard on Freedom Debit cards which had no sufficient funds in their accounts. Venue is therefore proper in South Dakota, and it is respectfully recommended to the District Court that defendant's motion to dismiss for lack of venue be DENIED. Consideration of the relevant factors likewise does not warrant transfer of the prosecution of this matter to the Southern District of Florida for the convenience of the parties or witnesses, or in the interests of justice pursuant to Fed. R. Crim. P. 21(b). While the defendant is being prosecuted away

from her home state, this factor alone does not justify a transfer. The other factors mitigate in favor of a trial in South Dakota. It is respectfully recommended defendant's Motion to Transfer (Doc. 42) be DENIED.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 17th day of April, 2006.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk
By _____, Deputy
(SEAL)

39 Fed.Appx. 839
39 Fed.Appx. 839
**(Cite as: 39 Fed.Appx. 839)**

Page 1

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Julius O. BANKOLE, Defendant-Appellant.
No. 01-4314.

Argued April 5, 2002.
Decided June 24, 2002.

Defendant was convicted in the United States District Court for the Eastern District of Virginia, Albert V. Bryan, Jr., Senior District Judge, of bank fraud, and he appealed on grounds that venue was improper. The Court of Appeals held that: (1) venue for prosecution was proper, and (2) any error in jury instruction that venue was appropriate "where the results of the fraud are felt" was not prejudicial to defendant.

Affirmed.

West Headnotes

[1] Criminal Law 108(1)
110k108(1)
Venue for defendant's prosecution for bank fraud was proper in district where uncontradicted evidence established that bank fraud offense, involving debit transaction, was completed, i.e., where transaction was processed. 18 U.S.C.A. §§ 1344, 3237(a).

[2] Criminal Law 1172.1(3)
110k1172.1(3)
Any error in jury instruction, given at defendant's trial for bank fraud, that venue was appropriate "where the results of the fraud are felt" was not prejudicial to defendant, as completion of bank fraud offense, i.e., account processing, occurred in same venue where bank suffered its loss and results of fraud were felt. 18 U.S.C.A. § 1344.

*840 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-00-403-A).

ARGUED: Stanley James Reed, Lerch, Early & Brewer, Chartered, Bethesda, Maryland, for Appellant. Stephen P. Learned, Assistant United States Attorney, Alexandria, Virginia, for Appellee. OB BRIEF: Suzanne S. Nash, Lerch, Early & Brewer, Chartered, Bethesda, Maryland, for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

Before NIEMEYER and KING, Circuit Judges, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished PER CURIAM opinion.

OPINION

PER CURIAM.

Julius O. Bankole appeals his January 2001 conviction in the Eastern District of Virginia on a charge of bank fraud. Bankole raises only one issue on appeal: a claim of improper venue. Because the Eastern District of Virginia was an appropriate venue for his prosecution, we affirm.

I.

On November 8, 2000, Bankole was indicted on a single count of bank fraud, in violation of 18 U.S.C. § 1344. [FN1] He thereafter moved to dismiss the indictment for improper venue, and the court denied his motion without prejudice. His one-day jury trial took place in the Eastern District of Virginia on January 24, 2001.

> FN1. The bank fraud statute, 18 U.S.C. § 1344, provides that:
> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; is guilty of an offense against the United States.

According to the evidence, Bankole owned a Maryland corporation, Safari, Inc. ("Safari"), which maintained an account at Chevy Chase Bank, a Maryland-based financial institution (the "Chevy Chase Account"). He was also authorized to transact business for a company called Microworks, Nig. ("Microworks"), an entity operated by his father. Microworks maintained both checking and savings accounts at the United States Senate Federal Credit Union (the "USS FCU Checking Account" and the "USSFCU Savings Account"), where members of Bankole's family also did business. The USSFCU operates branch offices in the District of Columbia and in Alexandria, Virginia, and it operates "family service centers" in both Virginia and Maryland.

By early January 2000, Chevy Chase Bank had closed the Chevy Chase Account due to insufficient funds. Thereafter, on January 13, 2000, Bankole wrote a Safari check for $75,000, payable to his father, on the closed Chevy Chase Account. He deposited the check into the USSFCU Savings Account at a family service center in Rockville, Maryland. Prior to this deposit, that account had a balance of only five dollars.

*841 Following its receipt of the $75,000 check, USSFCU placed a "Notice of Hold" on it, rendering the funds unavailable for a period of five days. On January 18, 2000, when the hold was lifted, Bankole transferred $40,000 from the USSFCU Savings Account into the USSFCU Checking Account. On the following day, January 19, 2000, he paid a New Hampshire vendor the sum of approximately $36,000 to consummate a purchase of computers by Microworks, utilizing a Visa debit card drawn on the USSFCU Checking Account. This debit transaction, initiated from Maryland, resulted in the transfer of funds from the USSFCU Checking Account to the New Hampshire vendor, via a debit signal received and processed by USSFCU in Alexandria, Virginia.

On January 31, 2000, Chevy Chase Bank notified USSFCU that the Chevy Chase Account, on which Bankole had written the $75,000 check, was closed at the time the check was drawn. The USSFCU then referred the matter to the authorities, and Bankole thereafter acknowledged to the FBI that, when he wrote the $75,000 check, he knew that it was worthless and that the Chevy Chase Account had been closed.

When USSFCU handled the Visa card transaction, its executive offices were located in Alexandria, in the Eastern District of Virginia, and the processing of its banking transactions occurred there. Indeed, a USSFCU witness testified that the Visa debit signal was received at the Alexandria offices, and that the loss to USSFCU, i.e., its payment of $36,000 in nonexistent funds to the New Hampshire vendor, occurred at that point.

Because Bankole disputed the propriety of venue in the Eastern District of Virginia, the district court concluded that a question of fact existed on the issue. Without objection, the court submitted the venue issue to the jury, to be determined by a preponderance of the evidence. Bankole did not contest this procedure, but he objected to a specific portion of the venue instruction, which provided that:

> In determining the appropriate venue for bank fraud, you are instructed that venue lies in the place where the results of the fraud were felt. And the Government alleges that occurred here on Eisenhower Avenue where the headquarters of the bank is located.

J.A. 126-27. The jury returned a guilty verdict against Bankole, and he was sentenced to sixty days of incarceration, four months of community confinement, and three years of supervised release. He has filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

While we normally review an issue of venue de novo, *United States v. Wilson,* 262 F.3d 305, 320 (4th Cir.2001), the submission of a venue question to a jury is a proper procedure when the facts underlying venue are disputed. *Cf. United States v. Martinez,* 901 F.2d 374, 376 (4th Cir.1990) (observing that "proof of venue may be so clear that failure to instruct [the jury] on the issue is not reversible error"). In examining a guilty verdict, we view the evidence in the light most favorable to the Government, and we must sustain the conviction if there is substantial evidence supporting the verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Young,* 248 F.3d 260, 273 (4th Cir.2001).

We review for abuse of discretion a trial court's choice of instructions and its determination of the content of a jury charge. *United States v. Russell,*

Case 4:06-cr-40003-LLP Document 61 Filed 04/17/06 Page 13 of 14 PageID #: 173

971 F.2d 1098, 1107 (4th Cir.1992). Instructions are sufficient when, construed as a whole, they adequately state the controlling legal principles *842 without misleading or confusing the jury. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir.1999).

### III.
### A.

Pursuant to the Constitution of the United States, a defendant must be tried where the alleged crime was committed, i.e., in the appropriate venue. U.S. Const. art. III, § 2; U.S. Const. amend. VI. While Congress may provide for venue when it enacts a criminal statute, it did not do so in connection with the bank fraud statute. Thus, the selection of venue in a bank fraud prosecution is governed by the general venue statute for federal criminal offenses, set forth in 18 U.S.C. § 3237. Section 3237, covering those offenses where Congress has not expressly provided otherwise, states in pertinent part that:

> [A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. 18 U.S.C. § 3237(a).

[1] Venue for a federal criminal prosecution is to be determined "from the nature of the crime alleged and the location of the act or acts constituting it." [FN2] *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946). Of course, there may be more than one appropriate venue for such a federal criminal charge, and a particular venue is not improper simply because the defendant was never physically present there. *United States v. Wilson*, 262 F.3d 305, 320 (4th Cir.2001); *United States v. Blecker*, 657 F.2d 629 (4th Cir.1981).

> FN2. The charging paragraph of the single-count indictment against Bankole alleged that:
> On or about January 18, 2000, *in the Eastern District of Virginia*, defendant JULIUS O. BANKOLE *did knowingly execute* and attempt to execute *a scheme and artifice to defraud* the USSFCU and to obtain money and property, owned by and under the custody and control of the USSFCU, under false pretenses and representations, in that the defendant, relying on the fact that the USSFCU had not yet discovered that the $75,000 Safari check was worthless, caused a purchase by a VISA debit card, linked to his father's USSFCU account, to be charged to his father's account, *causing a loss to USSFCU of $35,991*, the amount of the VISA debit card purchase.
> (emphasis added).

In determining whether the bank fraud offense committed by Bankole was "begun, continued or completed" in the Eastern District of Virginia, we must assess whether some "essential conduct element" of the offense occurred there. *United States v. Villarini*, 238 F.3d 530, 533 (4th Cir.2001). And in order to determine the propriety of venue, we must first identify the conduct constituting the offense and the location of the criminal acts. *United States v. Barnette*, 211 F.3d 803, 813 (4th Cir.2000).

The bank fraud statute, 18 U.S.C. § 1344, proscribes the execution of a scheme to defraud a financial institution, and a fraud scheme completed in the Commonwealth of Virginia will give rise to venue in Virginia. *See Palliser v. United States*, 136 U.S. 257, 267-68, 10 S.Ct. 1034, 34 L.Ed. 514 (1890) (finding letter designed to induce fraud mailed from New York to Connecticut gave rise to venue in Connecticut). The mere fact that, as in this case, the communication was transmitted to Virginia by the New Hampshire vendor will not defeat venue. *See United States v. Murphy*, 117 F.3d 137, 140 (4th Cir.1997).

Thus, while Bankole's contacts with the New Hampshire vendor were from Maryland, venue is proper in the Eastern District *843 of Virginia if the USSFCU, from which the New Hampshire vendor obtained nonexistent funds, completed the debit transaction in that district. And the uncontradicted evidence is that USSFCU operates its accounting processing in Alexandria, Virginia, and that the debit transaction was completed there. This evidence plainly preponderates in favor of the verdict, and it supports a finding that the bank fraud offense was *begun* in Maryland, *continued* into New Hampshire, and was *completed* in the Eastern District of Virginia. [FN3] *See* 18 U.S.C. § 3237(a); *Wilson*, 262 F.3d at 320.

> FN3. Bankole further maintains that, because the indictment alleged that he attempted to commit bank fraud, it was improper to convict him for the execution of the fraud in Virginia. Because the indictment charged in the conjunctive, alleging that

39 Fed.Appx. 839  
(Cite as: 39 Fed.Appx. 839, *843)

Page 4

Bankole "did knowingly execute and attempt to execute" the fraud, we would have to disregard the plain provisions of § 3237 for Bankole to prevail on this contention. It is clearly frivolous.

### B.

At trial, Bankole objected to the venue instruction, contending that it misstated the law. On appellate review, an erroneous jury instruction will mandate reversal only if, based on an analysis of the record as a whole, the error was prejudicial. *United States v. Hastings*, 134 F.3d 235, 241 (4th Cir.1998) ("When, over a proper objection, a district court erroneously instructs the jury on an element of the offense, the error may be disregarded as harmless if a reviewing court can determine, beyond a reasonable doubt, that a correctly instructed jury would have reached the same conclusion."); *Wellington v. Daniels*, 717 F.2d 932, 938 (4th Cir.1983).

[2] Bankole maintains that the district court, in instructing the jury that venue was appropriate "where the results of the fraud are felt," inappropriately relied on our unpublished decision in *United States v. Riselli*, 7 F.3d 228, text in Westlaw at 1993 WL 366364 (4th Cir.). [FN4] However, viewed in the proper context, the venue instruction was not incorrect. [FN5] And, in this circumstance, the completion of the bank fraud offense, i.e., the account processing in Virginia, occurred in the same venue where USSFCU suffered its loss and the results of the fraud were felt. Any error, therefore, could not have been prejudicial to Bankole.

> FN4. Our Local Rule 36(c) disfavors reliance on unpublished opinions, and such opinions are not precedential. *See Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir.1996) (en banc).

> FN5. The balance of the venue instruction, to which no objection was made, provided in pertinent part that:

>> Proper venue of a criminal trial requires the Government to charge a defendant only in the district or districts where the crime occurred. Therefore, in order to convict the defendant of the crime charged in the indictment, you must be satisfied that the crime alleged occurred in the Eastern District of Virginia or at least a part of the crime occurred here.

>> ....

>> You are also instructed that the Government need not proof [sic] that the entire offense took place here in the Eastern District of Virginia. Any offense against the United States begun in one district and completed in another or committed in more than one district may be prosecuted in any district in which the offense was begun and continued.

### IV.

For the foregoing reasons, venue was proper for the prosecution of Bankole in the Eastern District of Virginia, and we affirm his conviction.

*AFFIRMED.*

39 Fed.Appx. 839

Briefs and Other Related Documents (Back to top)

. 2001 WL 34384864T2 (Appellate Brief) Appellant's Reply Brief (Nov. 09, 2001)Original Image of this Document (PDF)

. 2001 WL 34384865T2 (Appellate Brief) Brief for the United States as Appellee (Oct. 29, 2001)Original Image of this Document (PDF)

. 2001 WL 34384866T2 (Appellate Brief) Brief for Appellant (Oct. 10, 2001)Original Image of this Document (PDF)

. 01-4314 (Docket) (May. 02, 2001)

END OF DOCUMENT